CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

March 06, 2025

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARELL TYRONE CRUTCHFIELD, ) | |
|     Plaintiff, ) | Civil Action No. 7:23-cv-00427 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| UNIT MANAGER GIBSON, ) |     Chief United States District Judge |
|     Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Marell Tyrone Crutchfield, a Virginia inmate proceeding *pro se*, alleges in this action that the sole remaining defendant, Unit Manager Gibson, violated his constitutional rights when plaintiff was incarcerated at Wallens Ridge State Prison (WRSP). Gibson moves for summary judgment, arguing that plaintiff failed to exhaust his administrative remedies. (Dkt. No. 25.) Crutchfield responded (Dkt. No. 28) and submitted a declaration with an exhibit (Dkt. Nos. 29, 29-1). Gibson's motion will be granted.

I. BACKGROUND

**A. Plaintiff's Allegations**

Crutchfield appears to allege two claims in a verified complaint. First, he alleges that "correctional officers working D-100 RHU allowed an inmate to attack me while I was in full restraints on July 6, 2023 in D-100 pod at or around 8 am to 9:30 am." (Compl. 2.) He states that officers allowed inmates to escape their restraints to attack him. (*Id.* at 3.) He alleges that he was "warned by CO Evans that he wouldn't make another round and I will be sorry that he didn't!" (*Id.*) In his second claim, Crutchfield alleges that he was threatened after asking for video footage to be saved and for forms to be provided to him. (*Id.* at 2.) No forms were given to him, and "I'm being told if I 'keep running my mouth' something else will happen to me!"

(*Id.*)  Crutchfield alleges that Gibson told him that he does not have "a reliable source to confirm why I was assaulted?"  (*Id.* at 3.)  Crutchfield requests damages for emotional distress and physical injury, and he also asks to not be housed where there are family members of the staff that allowed him to be assaulted.  (*Id.*)

In addition to Gibson, plaintiff sued Jeffery Artrip, the Warden at WRSP, and certain "Unknown Correctional Officers".  The court granted Artrip's motion to dismiss on August 22, 2024.  (Dkt. No. 31.)  The unknown officers were terminated by oral order on November 13, 2023.  (Dkt. No. 11.)

**B. Facts in Support of Defendants' Motion**

In support of his motion, Gibson submitted the affidavit of Wallens Ridge State Prison Grievance Coordinator C. Vilbrandt.  (Vilbrandt Aff., Dkt. No. 26-1.)

**1. Grievance procedure**

Operating Procedure (OP) 866.1 is a mechanism for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures.  The process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.  (*See* Vilbrandt Aff. ¶ 4, Encl. A.)  All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, issues related to institutional disciplinary hearings, State and Federal court decisions, laws, and regulations, and matters beyond the control of the VDOC.  Each inmate is entitled to use the grievance procedure for problem resolution.  (Vilbrandt Aff. ¶ 5.)

A regular grievance must be submitted within 30 calendar days from the date of the incident.  Before an inmate submits a regular grievance, an inmate must demonstrate that he made an attempt at informal resolution.  This can be done by submitting an informal

complaint/written complaint form to the Grievance Department at his institution. When an inmate submits an informal complaint, it is forwarded to the appropriate department head. Prison staff are tasked with responding within 15 calendar days to ensure that informal responses are provided before the 30-day time period expires. If an inmate is dissatisfied with the response to the informal complaint, or if the staff fail to provide a written response within 15 days, he may submit a regular grievance on the issue. When filing his regular grievance, an inmate must attach his informal complaint to show he attempted to informally resolve the issue. Only one issue per grievance form is addressed. Grievances must be appealed through all available levels of review to satisfy the exhaustion requirement. (Vilbrandt Aff. ¶ 6.)

Grievances that do not meet the filing requirements of OP 866.1 are returned to the inmate within 2 working days from the date of receipt noting the reason for the return on the intake section of the grievance form. Reasons include, but are not limited to, more than one issue per grievance, expired filing period, repetitive, and request for services. The inmate is instructed how to remedy any problems with the grievance when feasible. A copy is made of all grievances returned to the inmate with the justification for the return noted on the second page of the grievance form. If an inmate wishes a review of the intake decision on any grievance, he may send the grievance to the Regional Ombudsman for a review. There is no further review of the intake decision. The Regional Ombudsman decision is final. (Vilbrandt Aff. ¶ 7.)

If a Regular Grievance is accepted during the intake process, there are three levels of possible review. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal to Level II. Level II responses are provided by the Regional Administrator, the Health Services Director, the Chief of Operations for Offender Management Services, or the Superintendent for Education. For most

issues, Level II is the final level of review. For those issues appealable to Level III, they are reviewed by the Deputy Director or Director of the VDOC. The time limit for issuing a response is 30 days for Level I, 20 days for Level II, and 20 days for Level III. Expiration of the time limit without issuance of a response at any stage automatically qualifies the Regular Grievance for appeal. (Vilbrandt Aff. ¶ 9.)

An inmate may file an Emergency Grievance if he believes there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. Emergency grievance forms are available on a 24-hour basis regardless of housing status. An Emergency Grievance should receive a response within 8 hours. If the issue does not subject the inmate to immediate risk of serious personal injury or irreparable harm, this is indicated on the Emergency Grievance form and is signed with the date and time. If the issue subjects the inmate to immediate risk of serious personal injury or personal harm, the staff person determines if he or she can address the issue or if it needs to be forwarded to a higher authority for resolution. The filing of an Emergency Grievance does not satisfy the exhaustion requirement. (Vilbrandt Aff. ¶ 10.)

All inmates are oriented to the grievance process when they are received at WRSP. Inmates have access to written complaint forms, grievance forms, and emergency grievance forms at WRSP. These forms are available to all inmates, and inmates can ask any staff member in the housing unit for a form at any time. (Vilbrandt Aff. ¶ 16.)

**2. Crutchfield's grievance activities**

On July 11, 2023, Crutchfield filed a Written Complaint (Informal Complaint), Log No. WRSP-23-INF-02850, where he stated that "On 7/5-6 at 8 to 10 am I was allowed to be assaulted by another while in full restraints! While in D-100 table rec, C.O.S. gave a key to inmate to

4

release himself or allowed shackles and cuffs to malfunction so I could be assaulted!" On July 27, 2023, the Written Complaint received a response from the Institutional Investigator stating, "The complaints you make in Written Complaint WRSP-23-INF-02850 have been investigated. All video footage of the incident has been reviewed and retained. There is no evidence to support your allegations. Based on these factors, your allegations are determined to be unfounded." (Vilbrandt Aff. ¶ 12, Encls. B, C.)

Crutchfield filed a Regular Grievance on July 27, 2023, Log No. WRSP-23-REG-00286, pertaining to the prior Written Complaint, which stated: "I've put in multiple requests to address this security issue I'm having! I've spoken verbally with the unit manager and multiple investigators! Their only remedy has been to shift blame/responsibility to a different department! I've yet to receive a response to the informal complaint process and will be transferred in another attempt to circumvent my paperwork/due process! Also, I'm not being allowed access to the video footage. I put in paperwork to receive!" (Vilbrandt Aff. ¶ 14, Encl. D.)

The Regular Grievance received a response from the Institutional Investigator who stated, "The complaints you make in the Regular Grievance WRSP-23-REG-00286 have been previously investigated. There was no evidence to support your allegations of any staff misconduct. Your allegations were determined to be unfounded. You were transferred to Red Onion State Prison on 7-28-2023". (*Id.*)

On August 21, 2023, the WRSP Warden provided a Level I response to the Regular Grievance. Crutchfield appealed the Level I response to Level II. The Regional Administrator rejected the appeal, stating: "When appealing the Level I decision, send the original grievance form with the Level I response and your reasons for appeal, along with any original informal

materials and supporting documents. Resubmit your appeal package to this office within 5 calendar days. The time limits will begin on the receipt of your grievance." (*Id.*) Crutchfield did not appeal his rejected grievance. (*Id.* ¶15.)

C.  **Plaintiff's Response to Motion for Summary Judgment**

In his response, Crutchfield asserts that he was unable to comply with the procedures in OP 866.1 because he was being held in the Restrictive Housing Unit (RHU), which left him dependent on officers or staff to provide paperwork and copies to pursue a grievance. (Dkt. No. 28 at 2.) Also, after plaintiff filed his paperwork, he was placed under "emergency status," his property was taken, and he was transferred to another prison. (*Id.* at 3.) He filed what he could despite his methods being "limited." (*Id.* at 5.) Then, upon receiving his property, many documents and items were missing, and the time to appeal had expired. (*Id.* at 6.)

Crutchfield has also filed a declaration, signed under penalty of perjury, that echoes many of these assertions. (Dkt. No. 29.) According to Crutchfield, Gibson attempted to circumvent his rights by having plaintiff transferred to another facility. (*Id.* ¶ 4.) Upon moving, Crutchfield's property was taken and held by staff, which was either misplaced, stolen, or never returned to him. (*Id.* ¶ 5.) Crutchfield asked for his property so he could pursue exhaustion, but by the time it was returned, the time to appeal had expired. (*Id.* ¶¶ 6–7.) Crutchfield attaches an exhibit which shows that he was taking steps to retrieve his documents to pursue exhaustion, dated July 27, 2023, at which time the Level II phase of the process was concluding. (*Id.* ¶¶ 8–9, Ex. 1.) Thus, he notes that there was nothing else he could have done pertaining to exhaustion of remedies because the prison staff at WRSP was holding his property. (*Id.* ¶ 10.)

He also notes that he was being seen by providers for mental health issues and injuries to his back, neck, arm, and knee. (*Id.* ¶¶ 11–13.)

6

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986).  If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment.  *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).  On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.  And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

While the submissions of *pro se* litigants are liberally construed, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), the court must also abide the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003).

**B. Exhaustion of Administrative Remedies**

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). This requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1859 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

8

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 136 S. Ct. at 1859–60). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 136 S. Ct. at 1859. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

A prisoner's "failure to exhaust is an affirmative defense under the PLRA." *See Jones*, 549 U.S. at 216. Thus, defendant-prison officials must plead and prove that their agency had a procedure "capable of use to obtain some relief for the action complained of," *id.*, and that the prisoner-plaintiff "failed to take advantage" of that procedure before bringing his claim to federal court, *Washington v. Rounds*, 223 F. Supp. 3d 452, 459 (D. Md. 2016). *See Jones*, 549 U.S. at 218–24. If a defendant makes this showing, the burden shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the administrative remedy was not actually "available" to him because he was prevented, "through no fault of his own, . . . from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011). The PLRA's express "limitation on an inmate's duty to exhaust . . . has real content," *Ross*, 136 S. Ct. at 1858, and federal courts are "obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials," *Hill v. O'Brien*, 387 F. App'x 396, 400 (4th Cir. 2010) (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).

Gibson argues that Crutchfield did not exhaust his administrative remedies because he

9

failed to properly appeal the Level I decision. As noted, Crutchfield's appeal from Level I to Level II was rejected, and Crutchfield did not re-submit his appeal. The Regional Administrator rejected the appeal as follows: "When appealing the Level I decision, send the original grievance form with the Level I response and your reasons for appeal, along with any original informal materials and supporting documents. Resubmit your appeal package to this office within 5 calendar days. The time limits will begin on the receipt of your grievance." (Vilbrandt Aff. ¶ 14.)

The court has considered Crutchfield's response, including his sworn declaration. His statements pertaining to exhaustion are related to his submission on July 27, 2023, and his subsequent transfer to Red Onion on July 28. However, the Level I response was provided weeks later on August 21, 2023. (Vilbrandt Aff. ¶ 14.) Crutchfield appealed at that time, but the appeal was rejected as noted, with directions for him to re-submit the appeal. Crutchfield did not re-submit the appeal, and his response to the summary judgment motion provides no explanation for this failure. While Crutchfield asserts that WRSP staff was holding his personal property upon his transfer, he was still able to attempt an appeal, so his argument provides no basis for the court to conclude that this precluded him from re-submitting the appeal. Ultimately, the court finds that Crutchfield's statements pertaining to exhaustion are not sufficient to create an issue of material fact.[1]

Therefore, the court will grant defendant's motion for summary judgment on the basis of plaintiff's failure to exhaust his administrative remedies.

---

[1] The court further notes that none of plaintiff's grievance activities relate to his retaliation claim. This provides an additional basis to dismiss his retaliation claim for failure to exhaust.

## III.  CONCLUSION

For the reasons stated in this opinion, the court will grant defendant's motion for summary judgment in an appropriate order.

Entered: March 6, 2025.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge